914 A.2d 231

Kathleen HILL

v.

CROSS COUNTRY SETTLEMENTS, LLC.

No. 2283, Sept. Term, 2005.

Court of Special Appeals of Maryland.

Jan. 5, 2007.

**352**

Jeffrey L. Forman, Bruce E. Kauffman, Towson, for appellant.

Lewlie J. Williams, Christina Bolmarcich, Baltimore, for appellee.

Panel JAMES R. EYLER, BARBERA and SHARER, JJ.

Opinion by SHARER, J.

■ "The rule of law and equity is that money paid under mistake may be recovered when it is against good conscience for the recipient to retain the money." *Debelius Realty Co. v. Chassagne*, 260 Md. 109, 114, 271 A.2d 527 (1970). That maxim was never more appropriate than in the instant case, which involves principles of unjust enrichment.

Kathleen Hill appeals from the judgment of the Circuit Court for Baltimore County, which denied her motion to dismiss and motion for summary judgment, and granted summary judgment in favor of appellee, Cross Country Settlements, LLC.

Appellant raises two issues for our review, which we have distilled and recast as follows:

Whether the circuit court erred in finding unjust enrichment and in ordering restitution.[1]

For the reasons that follow, we shall affirm the judgment of the circuit court.

---

1. In her brief, appellant poses the issues as:
   1. Whether the lower Court erred in not dismissing Counts 4 and 5 of the Fourth Amended Complaint.
   2. Whether the lower Court erred in granting summary judgment to Cross Country, and not granting summary judgment to Ms. Hill [,] when there was a total lack of showing that Cross Country had any legal obligation to make payment of the $76,402.94 to Stewart Title Company.
   Because appellant's brief does not follow the order established by her two issues, we shall discuss them as one.

## FACTUAL BACKGROUND

The genesis of this litigation is a mortgage lien on property purchased by appellant's mother, Mary Sasso, in March 1991.[2] On September 16, 1991, Ms. Sasso conveyed the property to appellant, reserving a life estate. The life estate reservation required appellant to apply the proceeds from a future sale of the property to any mortgage indebtedness existing at the time of such sale.

On April 8, 1999, Ms. Sasso obtained a home equity loan from Provident Bank ("Provident"), using the property to secure the debt. Provident properly recorded all relevant documents among the land records in Baltimore City.

Later, in October 2002, Ms. Sasso refinanced the Provident mortgage, applying the new money, in part, to satisfy the April 1999 home equity loan. Provident again recorded its security interest among the land records in Baltimore City. The dispute presented in this appeal arises from the October 2002 mortgage debt.

Ms. Sasso died in May 2003, thereby extinguishing the life estate and vesting the entire fee simple ownership of the property in appellant. Thereafter, appellant continued to make mortgage payments to Provident until, in 2004, she agreed to sell the property to Ms. Adeday Mseka.

Cross Country provided settlement services in connection with the Hill–Mseka sale, which closed in July 2004, and requested appellant to provide complete information on all outstanding liens on the property prior to conducting settlement. Discovering the outstanding mortgage, Cross Country requested payoff information from Provident.

Provident assured Cross Country several times—once in writing—that there was no outstanding lien on the property and that a certificate of satisfaction had been forwarded to the appellant. That information, as developed by the record, was incorrect, and the full responsibility for the error rests with

---

2. The property is located at 533 S. Chester Street, Baltimore City.

Provident. At closing, Cross Country's representative asked appellant if she was aware of any outstanding mortgages on the property. In response, appellant submitted an affidavit denying knowledge of any encumbrances, admitting only to knowledge of the late Ms. Sasso's credit card account with Provident. Satisfied with that information, Cross Country proceeded to settlement on July 15, 2004. Net cash proceeds of the sale—$156,647.83—was paid to appellant.

Subsequently, Provident discovered its error and, in a letter dated September 16, 2004, notified Cross Country that, contrary to its previous communications to the contrary, there was a balance of $70,261.26 due on the October 2002 Sasso mortgage. Cross Country then made demand on appellant to pay this sum to satisfy the Provident note. Appellant declined the invitation.

On December 22, 2005, Provident notified appellant's purchaser, Ms. Mseka, that it would institute foreclosure proceedings to protect its lien on the property. Upon receiving this notice, Ms. Mseka made a claim against Stewart Title Guaranty Company on her title insurance policy. Stewart Title paid the outstanding mortgage debt in exchange for a release from Provident. Stewart Title then demanded reimbursement from Cross Country, which complied by making payment in full on February 18, 2005.

## PROCEDURAL BACKGROUND

Cross Country filed a complaint in the Circuit Court for Baltimore County on November 15, 2004, seeking reimbursement from appellant in the amount it paid to Stewart Title. In its fourth amended complaint appellee asserted five counts: (I) intentional misrepresentation, (II) intentional misrepresentation—concealment or nondisclosure, (III) negligent misrepresentation, (IV) unjust enrichment, and (V) monies had and received. Appellant filed a motion to dismiss all five counts on February 22, 2005. Cross Country filed a motion for partial summary judgment as to Count IV (unjust enrichment) on March 8, 2005.

On October 6, 2005, the circuit court granted appellant's motion to dismiss counts I (intentional misrepresentation), II (intentional misrepresentation—concealment or nondisclosure), and III (negligent misrepresentation). Finding that Cross Country was entitled to relief in the nature of restitution, the circuit court denied appellant's motion to dismiss Court IV (unjust enrichment) and Count V (monies had and received). On October 14, 2005, appellant filed a cross-motion for summary judgment, which was answered by Cross Country on November 21, 2005.

A hearing on the cross motions for summary judgment was held on December 2, 2005. The trial court issued a written order the same day, granting summary judgment in favor of Cross Country and ordering appellant to pay restitution to appellee in the sum of $70,261.26.

Additional facts will be set forth as they become necessary to our discussion of the issues.

## STANDARD of REVIEW

Our review of a circuit court's grant of summary judgment is *de novo*, as it is a purely legal decision. We must determine whether there existed a dispute of material fact and, if not, whether the circuit court's ruling was legally correct. *Cruickshank–Wallace v. County Banking and Trust Co.*, 165 Md. App. 300, 310, 885 A.2d 403 (2005).

"A material fact is a fact the resolution of which will somehow affect the outcome of the case." *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985) (citing *Lynx, Inc. v. Ordnance Prods., Inc.*, 273 Md. 1, 8, 327 A.2d 502 (1974)). "[A] dispute as to facts relating to grounds upon which the decision is not rested is not a dispute with respect to material fact and such dispute does not prevent the entry of summary judgment." *Salisbury Beauty Schs. v. State Bd. of Cosmetologists*, 268 Md. 32, 40, 300 A.2d 367 (1973). In the instant case, the parties essentially concede the lack of dispute of a material fact. In fact, both parties moved for summary judgment.

"The standard of review for a grant of summary judgment is whether the trial court was legally correct." *Goodwich v. Sinai Hosp. of Baltimore, Inc.,* 343 Md. 185, 204, 680 A.2d 1067 (1996). The trial court, in accordance with Md. Rule 2–501(f), shall grant a motion for summary judgment "if the motion and response show that there is no genuine dispute as to any material fact and that [the moving party] is entitled to judgment as a matter of law." The purpose of summary judgment procedure is not to try the case or to decide the factual disputes, but to decide whether there is an issue of fact which is sufficiently material to be tried. *See Goodwich, supra,* 343 Md. at 205–06, 680 A.2d 1067; *Coffey v. Derby Steel Co.,* 291 Md. 241, 247, 434 A.2d 564 (1981); *Berkey v. Delia,* 287 Md. 302, 304, 413 A.2d 170 (1980). Thus, once the moving party has provided the court with sufficient grounds for summary judgment, the non-moving party must produce sufficient evidence to the trial court that a genuine dispute of a material fact exists. *See, e.g., Hoffman Chevrolet, Inc. v. Washington County Nat'l Sav. Bank,* 297 Md. 691, 712, 467 A.2d 758 (1983). This requires producing facts under oath, based on personal knowledge of the affiant to defeat the motion. "Bald, unsupported statements of conclusions of law are insufficient." *Id.* With these considerations in mind, we turn to the case *sub judice.*

## DISCUSSION

### *Whether the trial court erred in finding unjust enrichment and in ordering restitution.*

Within her general assignments of error, appellant points to three specific rulings of the circuit court that she claims to be legally incorrect. First, she denies that the payment of more than $70,000 to which she was entitled was a windfall that implicates concepts of unjust enrichment. Second, she argues, Cross Country has no standing to sue her. Finally, she asserts that Cross Country's complaint did not "sound in restitution for unjust enrichment or monies had and received." We shall address the latter question first.

## Sufficiency of the Complaint

█ In support of her argument that Cross Country's fourth amended complaint "did not sound in restitution for unjust enrichment or monies had and received," appellant states that

[a] review of Counts Four and Five in Cross Country's [fourth amended] Complaint reveals that they are not claims seeking restitution for unjust enrichment or monies had and received at all. Instead, they sound in indemnification. That is, the Complaint does not allege that Ms. Hill owes anything to Provident, or that she has any assets belonging to Provident. Rather, the Complaint suggests an indemnification action, in which it is alleged that Ms. Hill owes money to Cross Country, because Cross Country paid money to Stewart.

█ Other than that bald assertion, appellant cites no authority to support the claim that Cross Country's complaint does not state a cause of action in unjust enrichment.[3] As we look to the fourth amended complaint, we find that, after a recitation of facts common to all counts, it is alleged, in Count IV, that:

The payment of $156,647.83 to Hill, rather than the $86,386.57 due to her, conferred a substantial benefit on Hill. She was aware of, and had knowledge of, the benefit. She was aware of the outstanding Provident Bank mortgage and she negotiated a check for an amount far in excess of that due her.

Count V, in turn, merely stated "for money had and received which in equity and good conscience should be paid to Cross Country."

█ We find no fault with either of those counts, which, in our view, when taken with the considerable recitation of facts, fairly set out the nature of the claim and the remedy sought.

---

**3.** Claims made without a citation to authority to support the claim are susceptible to dismissal. *See Oroian v. Allstate Ins. Co.,* 62 Md.App. 654, 658, 490 A.2d 1321 (1985).

The purpose of pleading is to apprize opposing parties of the basis of the claim and the relief sought. *Pearce v. Watkins,* 68 Md. 534, 13 A. 376 (1888). That concept continues to the present time. *Ledvinka v. Ledvinka,* 154 Md.App. 420, 429, 840 A.2d 173 (2003).

The circuit court did not err in declining to grant appellant's motion to dismiss on the ground that the fourth amended complaint failed to state a cause of action.

## Windfall/Unjust Enrichment

Windfall has been defined generically as "a piece of unexpected good fortune, typically one that involves receiving a large amount of money." The New Oxford American Dictionary, p. 1933, 2001. In the legal sense, a windfall is said to be "an unanticipated benefit, usually in the form of a profit and not caused by the recipient." BLACK'S LAW DICTIONARY, Eighth Ed., p. 1631, 1999. More particularly to Maryland law, the term "windfall" is typically applied to describe unwarranted, unjustified, or undesirable outcomes. *See, e.g., Gladis v. Gladisova,* 382 Md. 654, 681, 856 A.2d 703 (2004) ("It is unjust to provide her ... this windfall at her father's expense"); *Friendly Finance Corp. v. Orbit Chrysler Plymouth Dodge Truck, Inc.,* 378 Md. 337, 350–51, 835 A.2d 1197 (2003) ("A secured interest holder would receive a windfall if it were to obtain the right to possess and sell the vehicle without first paying the garage's repair bill."); *Williams v. State,* 364 Md. 160, 176, 771 A.2d 1082 (2001) ("We cannot allow the State to be the recipient of the unquestionable windfall that resulted from its own clear violation of the discovery rules."); *Nicholson v. State,* 157 Md.App. 304, 316, 850 A.2d 1204 (2004) ("Such relief would be not only a windfall for the defendant, but a loss for the administration of justice."); *Poteet v. Sauter,* 136 Md.App. 383, 413, 766 A.2d 150 (2001) (The theory underlying the collateral source rule is prevention of windfalls to tortfeasors.); *Williams v. State,* 99 Md.App. 711, 727, 639 A.2d 180 (1994) ("Although in the actual trial of cases, such undeserved windfalls regularly occur, there is no legal entitlement to a lucky break.").

We find no "legal entitlement" to the "lucky break" appellant seeks in this case. The funds paid to appellant at settlement must certainly be considered to be "an unanticipated benefit." To suggest that the substantial overpayment to appellant was not a windfall strains credulity and brings to mind the fictions of the tooth fairy and Easter bunny.

In the final analysis, however, the test of appellant's obligation to repay the funds to Cross Country is not necessarily about a windfall—it is about fairness, equity, and good conscience. In short, it is about unjust enrichment.

In *Everhart v. Miles,* 47 Md.App. 131, 422 A.2d 28 (1980), this Court adopted the definition of unjust enrichment as

the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience. A person is enriched if he has received a benefit, and he is unjustly enriched if retention of the benefit would be unjust. Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another.

47 Md.App. at 136, 422 A.2d 28 quoting 66 Am.Jur.2d *Restitution and Implied Contracts* § 3 (1973).

Also, in *Everhart,* this Court adopted the elements of unjust enrichment as established by Williston on Contracts, § 1479 (3rd. Ed.1970):

1. A benefit conferred upon the defendant by the plaintiff;

2. An appreciation or knowledge by the defendant of the benefit; and

3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

Appellant asserts that she did not receive a benefit, but that if she did, the benefit was not in the nature of *Cross Country's money.* We shall return to the third element, *infra.*

We are satisfied that, under any definition of unjust enrichment, appellant was favored with receipt of funds that, in equity and good conscience, she ought not retain.

### Cross Country's Standing

■ Appellant argues that, assuming *arguendo* she did receive a windfall, the funds paid to her were not those of Cross Country; that Cross Country had no obligation to reimburse Stewart Title; and, ergo, Cross Country had no standing to seek reimbursement from her. That argument is without merit.

Despite Provident's error, the mortgage lien was a matter of record. It is obvious, although not relevant to the issues here presented, that there was a failure in the title examination and settlement process. Stewart Title, as it was obligated to do under the terms of its policy, paid Provident to clear the impediment to the title. Appellant argues that Cross Country had no obligation to Stewart Title and concludes that Cross Country was, in effect, a volunteer or an officious payor.

Despite appellant's assertion to the contrary, Cross Country did have an obligation to pay Stewart Title. Before the circuit court, without objection or contradiction, was the affidavit of Rebecca Raras, president of Cross Country. Ms. Raras, under oath, stated, *inter alia,* "Stewart made demand upon Cross Country, *in accordance with the terms of our underwriting agreement,* for reimbursement of the funds it paid to Provident." (Emphasis added). Having thus been obligated to Stewart, Cross Country was neither a volunteer nor an officious payor in its payment to Stewart.

### CONCLUSION

#### Remedy

The doctrine of unjust enrichment is applicable where " 'the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money'," and gives rise to the policy of restitution as a remedy. Dobbs, *Handbook on the Law of Remedies* § 4.2 (1973) (quoting Lord

Mansfield in *Moses v. MacFerlan,* 2 Burr. 1005, 97 Eng. Rep. 676 (K.B.1760)). As Judge Bloom pointed our for this Court,

[t]hose remedies serve to "deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses."

*Mass Transit Admin. v. Granite Constr.,* 57 Md.App. 766, 774, 471 A.2d 1121 (1984) (quoting Dobbs, *supra,* § 4.1). And, as Judge Bloom further observed, "the measure of the recovery is the gain to the defendant, not the loss by the plaintiff." *Id.* at 775, 471 A.2d 1121.

In *Plitt v. Greenberg,* 242 Md. 359, 363–64, 219 A.2d 237 (1966), the Court of Appeals said:

Plitt, however, does possess a colorable cause of action grounded on a theory of unjust enrichment or restitution. Although Greenberg may not have known that he had received the proceeds of Plitt's check into his account, and no express contract for debt existed between Plitt and Greenberg, the law implies a debt "whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain."

(quoting *State, to use of Employment Sec. Bd. v. Rucker,* 211 Md. 153, 158, 126 A.2d 846 (1956)).

The lack of an express contract or privity between appellant and Cross Country does not preclude application of the principles of unjust enrichment. Just as it is unconscionable and contrary to equity to permit appellant to retain the wrongly paid funds, it would be unconscionable and contrary to equity for us to accept her invitation to reverse. We shall not.[4]

---

4. After the filing of briefs, appellant moved to strike the appendix to appellee's brief, which included a promissory note and deed of trust. While it is true that neither of those documents were made part of the record below, it is equally true that they are not relevant to our decision in this appeal. Hence, we deny appellant's motion to strike as superfluous.

**362**

JUDGMENT OF THE CIRCUIT COURT FOR BALTI-
MORE COUNTY AFFIRMED;

COSTS ASSESSED TO APPELLANT.