**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 22-1189**

─────────────

MARIO ERNESTO AMAYA; JOSE NORLAND GONZALEZ,

        Plaintiffs – Appellees,

 and

JOSE AMADEO CASTILLO,

        Plaintiff,

v.

DGS CONSTRUCTION, LLC, d/b/a Schuster Concrete Construction,

        Defendant – Appellant,

 and

WHITING-TURNER CONTRACTING COMPANY,

        Defendant.

─────────────

**No. 22-1232**

─────────────

MARIO ERNESTO AMAYA; JOSE NORLAND GONZALEZ,

        Plaintiffs – Appellants,

and

JOSE AMADEO CASTILLO,

        Plaintiff,

v.

DGS CONSTRUCTION, LLC, d/b/a Schuster Concrete Construction,

        Defendant – Appellee,

 and

WHITING-TURNER CONTRACTING COMPANY,

        Defendant.

---

Appeals from the United States District Court for the District of Maryland at Greenbelt. Theodore D. Chuang, District Judge. (8:16−cv−03350−TDC)

---

Argued: March 10, 2023                    Decided: April 21, 2023

---

Before WILKINSON, HARRIS, and RUSHING, Circuit Judges.

---

Affirmed by unpublished opinion. Judge Wilkinson wrote the opinion, in which Judge Harris and Judge Rushing joined.

---

**ARGUED:** Christopher Curtis Dahl, BAKER DONELSON, Baltimore, Maryland, for Appellant/Cross-Appellee. Steven Michael Pavsner, JOSEPH GREENWALD AND LAAKE, P.A., Greenbelt, Maryland, for Appellees/Cross-Appellants. **ON BRIEF:** Stephen M. Silvestri, Mary M. McCudden, JACKSON LEWIS P.C., Baltimore, Maryland; Jennifer L. Curry, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, Baltimore, Maryland, for Appellant/Cross-Appellee. Erika Jacobsen White, Brian J. Markovitz, JOSEPH GREENWALD AND LAAKE, P.A., Greenbelt, Maryland, for Appellees/Cross-Appellants.

---

Unpublished opinions are not binding precedent in this circuit.

2

WILKINSON, Circuit Judge:

Mario Ernesto Amaya and Jose Norland Gonzalez represent a class of construction workers who sued DGS Construction, LLC, also known as Schuster Concrete Construction (Schuster). They alleged that Schuster unlawfully withheld benefit payments on overtime hours the class worked while constructing the MGM Grand Hotel and Casino in Prince George's County, Maryland. A jury found that Schuster was unjustly enriched under Maryland law by withholding these payments. Schuster appeals, arguing primarily that the district court committed reversible error in denying its motion for judgment as a matter of law because the evidence was insufficient to establish unjust enrichment. Schuster additionally asserts that the district court erred in certain evidentiary rulings and its jury instructions. Amaya and Gonzalez cross-appeal, positing that the district court erred in granting summary judgment to Schuster on the class's claim alleging a violation of the Maryland Wage Payment and Collection Law. For the reasons that follow, we shall affirm the district court.

I.

A.

DGS Construction, LLC, is a Maryland-based concrete contractor doing business as Schuster Concrete Construction. Schuster entered into a subcontract with the Whiting-Turner Construction Company, which had received a general contract to build the MGM resort.

As the general contractor on the MGM project, Whiting-Turner executed a Project Labor Agreement (PLA) with various trade unions whose members would work on the

3

construction of the resort. The PLA sought to have all subcontractors who worked on the project denote their agreement with the PLA and agree to be bound by its terms. The PLA, however, also allowed non-union subcontractors to work on the MGM project and exempted them from its requirements if less than three qualified union subcontractors bid on any aspect of the construction.

Even those subcontractors exempted from the PLA had certain baseline requirements. The PLA provided that:

> Exemption from this Agreement shall not automatically relieve the successful bidder from complying with Project based requirements . . . . For all contractors working on the project, payment of prevailing wages and fringe benefit rates of the project as indicated on the Maryland Department of Labor, Licensing, and Regulation Informational Wage Rate for Prince George's County determined at the commencement of the Project, which Developer has voluntarily adopted for the Project, shall be a minimum requirement and contractors are free to provide wages and fringe benefits at rates in excess of such prevailing rates.

J.A. 5483. The PLA therefore incorporated as a floor for *all* contractors the wage rates set by the Maryland Department of Labor, Licensing and Regulation (DLLR) for state-funded projects for Prince George's County. [1]

In December 2014, when Schuster executed a subcontract with Whiting-Turner to perform concrete work on the MGM project, it did not assent to the PLA because only one union subcontractor had bid on that aspect of the work. Schuster, however, agreed within

---

[1] In 2019, the DLLR was renamed the Maryland Department of Labor. For purposes of this appeal, we will refer to the agency as the DLLR.

4

its subcontract to be bound by a "Project Manual" from Whiting-Turner, which outlined additional requirements.

The Project Manual included a wage rate schedule, labeled as "S.3: Project Labor Minimum Wage Rates" (S.3). J.A. 5389–91. The S.3 stated that, consistent with the PLA, Schuster must pay its workers pursuant to a designated schedule consisting of wage rates that "were voluntarily adopted for the Project by [the] Developer" and were "derived from those listed by the [DLLR] for Prince George's County." J.A. 5389. The S.3 further required Schuster to certify that the wages paid to its employees were "not less than those established as set forth in the Contract Documents." *Id.* Importantly, the S.3 clearly stated that the MGM project was "not subject to State law regarding the payment of prevailing wages or the Davis-Bacon Act." *Id.*

The S.3 thus listed wages which mirrored those set by the DLLR. It had two columns labeled as "Basic Hourly Rate" and "Fringe Benefit Payment." J.A. 5390. Workers earned fringe benefit payments only if they opted to receive cash in lieu of actual fringe benefits, such as health insurance. For example, a carpenter who opted to take the fringe benefit payment in lieu of in-kind benefits would receive the "Basic Hourly Rate" of $26.81 and the "Fringe Benefit Payment" of $8.19. *Id.*

This appeal involves the lack of fringe benefit payments on overtime hours. The S.3 did not specify whether fringe benefit payments were due for overtime hours. Whereas the "Basic Hourly Rate" was calculated at time and a half after 40 hours worked, Schuster took the position that it was not required to make fringe benefit payments on overtime hours. Thus, the carpenter would earn $40.22 for each overtime hour worked but zero dollars in

5

fringe benefits. Schuster's reasoning for not making benefit payments on overtime was that the costs it pays for in-kind benefits, like health insurance premiums, are fixed at monthly levels and do not increase when an employee works overtime. Moreover, it did not read the project documents as requiring fringe benefit payments on overtime. It therefore concluded that it need not pay Appellees fringe benefits for overtime hours.

B.

Mario Ernesto Amaya and Jose Norland Gonzalez were at-will employees of Schuster who worked on the MGM project and chose to receive cash in lieu of in-kind benefits. Like other Schuster employees, they received no written employment contract but were repeatedly told that the MGM project was a "scale" job. *See, e.g.,* J.A. 165, 167–73. According to Gonzalez, he understood "scale" to mean "the highest rate paid by the state or federal government." J.A. 4322.

Amaya and Gonzalez later sued Schuster and Whiting-Turner for the lack of fringe benefit payments on overtime hours on behalf of a class of approximately 1,600 similarly situated employees.[2] They asserted five causes of action, but relevant to this appeal are the claims against Schuster for violations of the Maryland Wage Payment and Collection Law (MWPCL), Md. Code Ann., Lab. & Empl. §§ 3-501– 3-509, and unjust enrichment under Maryland law.

---

[2] This case was initially filed in state court in Prince George's County, Maryland, but was removed to federal court by Schuster and Whiting-Turner. The district court asserted jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it involved questions concerning section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

6

1.

In August 2019, the district court granted summary judgment to Whiting-Turner on all claims and granted summary judgment to Schuster in part and denied it for the unjust enrichment claim. For the MWPCL claim, the district court noted that a "violation of the MWPCL occurs when an employer fails to pay 'all wages due for work that the employee performed before the termination of employment,' including overtime pay and fringe benefits." J.A. 3628 (quoting Md. Code Ann., Lab. & Empl. § 3-505(a)).

Appellee workers insisted that Schuster had promised to make fringe benefit payments on overtime hours based on the Project Manual "voluntarily adopt[ing]" government-listed wage rates. J.A. 3629. According to Appellees, "Maryland prevailing-wage law . . . requires payment of fringe benefits for *all* hours worked," and that requirement was embedded in the Project Manual. *Id.* (emphasis added) (internal quotations omitted). Schuster was allegedly aware of this requirement, according to the class, and thus the S.3 constituted an enforceable promise by Schuster to pay fringe benefits on overtime hours.

The district court, however, found a salient difference between wage *rates* and wage *law.* According to the court, "the Project Manual not only fail[ed] to explicitly incorporate the requirements of the Maryland prevailing wage law, but also specifically disavow[ed] the applicability of the Maryland prevailing wage law to the Project[.]" *Id.* Moreover, the court noted that the Project Manual never stated whether the "Fringe Benefit Payment" would be made on overtime hours. Thus, the court found that Schuster had not made an

7

explicit promise to pay its employees fringe benefits on overtime hours worked, and Appellees had no viable claim under the MWPCL.

The district court distinguished the MWPCL claim, which relied on an express agreement to make fringe benefit payments on overtime hours, from the unjust enrichment claim, which does not require any existing contract. It allowed the latter to proceed to trial, reasoning that even without an express promise to pay fringe benefits on overtime hours, there remained questions of fact over whether "it would be unjust for Schuster to be allowed to benefit from paying lower wages to [Appellees] on a project for which it was agreed that all workers would receive the prevailing wage rate." J.A. 3633.

### 2.

The unjust enrichment claim thus proceeded to a jury trial. The district court conducted a pre-trial conference, during which it denied Schuster's motion *in limine* to preclude Appellees from offering evidence that Schuster's subcontract with Whiting-Turner required it to make fringe benefit payments on overtime. At that time, Schuster also objected to the district court's proposed jury instructions on unjust enrichment.

The trial took place over four days in June 2021. Schuster raised further objections during trial to the district court's proposed jury instructions. At the end of both Appellees' case-in-chief and the presentation of the evidence, Schuster moved for judgment as a matter of law under Fed. R. Civ. P. 50(a). The district court denied these motions. The jury later returned a verdict in favor of Appellees on unjust enrichment. Schuster then filed a renewed motion for judgment as a matter of law under Fed. R. Civ. P. 50(b). The district court

denied this motion, finding there was sufficient evidence for a jury to conclude that Schuster was unjustly enriched under Maryland law.

Schuster timely appealed. It now argues that the district court erred in denying its motions for judgment as a matter of law, as Appellees did not introduce sufficient evidence to establish the elements of their unjust enrichment claim. Schuster additionally renews its arguments regarding the denial of its motion *in limine* and the court's allegedly erroneous jury instructions. Appellees lodge a conditional cross-appeal, arguing that if we find that their unjust enrichment claim fails, then we should rule that the district court erroneously granted Schuster summary judgment on the MWPCL claim. We need not address this conditional cross-appeal for we affirm the district court on the unjust enrichment issue. We thus focus on Schuster's unjust enrichment arguments, taking each of its contentions in turn.

II.

The gravamen of Schuster's argument on appeal is that the district court erred in concluding that there was sufficient evidence to support the jury's verdict against it on unjust enrichment.

The trial court denied Schuster's Rule 50(b) motion on this issue below. We review this holding de novo. *First Union Com. Corp. v. GATX Cap. Corp.*, 411 F.3d 551, 556 (4th Cir. 2005). We consider the evidence in the light most favorable to Amaya and Gonzalez as the prevailing parties. *Id.* Schuster "bears a hefty burden in establishing that the evidence is not sufficient" to support the jury's verdict. *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1249 (4th Cir. 1996). Though we cannot merely "rubber stamp" a jury verdict, "we

9

are compelled to accord the utmost respect to jury verdicts and tread gingerly in reviewing them." *Id.* at 1250. In sum, "[e]ntry of judgment as a matter of law is appropriate only if the evidence is legally insufficient to support the jury's verdict." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 196 (4th Cir. 2017).

## A.

To prevail on a claim of unjust enrichment under Maryland law, a plaintiff must show:

> 1. A benefit conferred upon the defendant by the plaintiff; 2. [a]n appreciation or knowledge by the defendant of the benefit; and 3. [t]he acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007). As Maryland courts recognize, however, a claim for unjust enrichment "may not be reduced neatly to a golden rule." *Id.* In general, a "successful unjust enrichment claim serves to deprive the defendant of the benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses." *Id.* at 352 (internal quotations omitted).

Unjust enrichment, moreover, is a remedy "to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided." *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000) (internal quotations omitted). In an unjust enrichment case, "there has been no agreement, the defendant has no prior

10

expectations either as to value or as to risk, and so the law of restitution simply returns the defendant to the *status quo* by disgorging the value of the benefit actually received." *Dolan v. McQuaide*, 79 A.3d 394, 403 (Md. App. 2013). Accordingly, a defendant may be unjustly enriched even if "a plaintiff is mistaken as to the duties or rights that he or she owes another and because of his mistake confers a benefit upon another[.]" *Hill*, 936 A.2d at 355 (internal quotations omitted).

## B.

With these principles in mind, we conclude there was sufficient evidence for the jury to determine that Schuster was unjustly enriched by failing to pay Appellees fringe benefits on overtime hours worked.

## 1.

We start with the evidence presented as to the "benefit conferred" on Schuster. A benefit "denotes any form of advantage," including the "advantage for which a person ordinarily must pay" or where a plaintiff "saves" a defendant "from expense or loss." Restatement (First) of Restitution § 1 cmt. b (1937); *see also Hill*, 936 A.2d at 353 (citing the First Restatement with approval). A benefit can be, *inter alia*, money or the performance of a service. *See, e.g., Hill*, 936 A.2d at 354 (paying a debt is a benefit conferred); *Dolan*, 79 A.3d at 403–04 (genuine dispute of material fact over whether consultant, who had allegedly helped plan opening of a gas station, provided a benefit to owner); *Everhart v. Miles*, 422 A.2d 28, 31 (Md. App. 1980) (making repairs and improvements on defendant's property constituted a benefit).

11

Appellees presented sufficient evidence at trial that they conferred a benefit on Schuster in the form of their services as workers on the MGM project. Although they received a basic hourly wage for overtime hours, they did not receive fringe benefits on those hours. Schuster conceded that the company "did not pay the fringe rate for any overtime hours worked by the plaintiffs or class members on the project." J.A. 4470. This concession shows a benefit conferred.

Schuster also admitted that "no member of the overtime fringe benefit class worked 2,080 or more regular straight time hours in a year." *Id.* This shows a benefit conferred, as Schuster computed the hourly benefit payments by calculating the annual value of the premiums it normally pays an employee's in-kind benefits, and then dividing that value by 2,080 hours—or 52 weeks of 40 regular time hours. Therefore, for an employee to receive the full annualized value of the cash benefit payments in lieu of in-kind benefits, he would had to have worked all 2,080 regular hours across the year. Given that none of the class worked 2,080 regular time hours, a jury could reasonably conclude that the class saved Schuster an expense it would otherwise bear—the normal cost of paying premiums on its employees' benefits. Thus, there was sufficient evidence of a benefit conferred.

2.

As for the second element—whether a defendant has "appreciation or knowledge" of the benefit conferred—the "essence" of this requirement is that "the defendant ha[s] an opportunity to decline the benefit." *Hill*, 936 A.2d at 354. Thus, the defendant need not have had knowledge of the benefit precisely at the time it was received if he could still decline or return the benefit when he became aware of it. *See id.* at 354–55. Moreover,

12

even if a plaintiff confers a benefit by mistake, this element can be satisfied as long as that mistake at some point dawns on the defendant and he "retains a choice of keeping or returning it." *Id.* at 355 (internal quotations omitted).

Appellees presented sufficient evidence that Schuster had knowledge and appreciation of the benefit conferred in multiple respects. First, we reiterate that Schuster conceded that its payments to workers did not include fringe benefit payments. Schuster was therefore aware that it had received the benefits of Appellees' services without having included the overtime fringe benefit amounts. Indeed, Schuster's Chief Financial Officer and its corporate designee, Lorraine Burns, testified that Schuster pays fringe benefit amounts on overtime hours for federal prevailing wage projects. As the district court noted, Schuster was thus "fully aware that contractors, under certain circumstances, pay overtime fringe benefit amounts, and that being able to refrain from paying overtime fringe benefit amounts reduces its labor costs and thus provides it with a financial benefit." J.A. 3723.

Second, a jury also reasonably could have concluded that Schuster knew or appreciated the benefit conferred upon it by Appellees because it tried to justify the lack of fringe benefit payments on overtime hours to Whiting-Turner. Burns testified that in March 2016, while the project was ongoing, a Whiting-Turner representative asked why Schuster was not paying fringe benefits on overtime hours worked. In response, Burns provided several supporting documents for Schuster's position that it was not required to pay fringe benefits on overtime. As Burns put it, "I was trying to indicate that what we do is a reasonable practice." J.A. 4594. Based on this evidence, a reasonable jury could conclude that Schuster would not have tried to justify its practice of denying fringe benefit payments

13

on overtime if it did not know or appreciate that it was retaining some benefit by avoiding these payments.

Third, there was further evidence presented that, even if they did not constitute an enforceable promise, the PLA and the Project Manual contemplated the payment of fringe benefits on overtime, and that Schuster knew this. As discussed above, these documents established that Whiting-Turner had committed to pay all contractors working on the MGM project the prevailing wage rates for Prince George's County set by the DLLR. The S.3 schedule then mirrored those rates. James Tudor, a DLLR Program Administrator responsible for the enforcement of state prevailing wage laws, testified at trial that it was the long-standing interpretation of the DLLR that on state prevailing wage projects, Maryland law requires the payment of fringe benefits on *all* hours worked, including overtime.

Even if Schuster was unaware of the DLLR's interpretation at the commencement of the project, evidence presented raises a plausible inference that it became aware while the project was ongoing. Burns attended a presentation during the MGM project in which Tudor discussed the requirement to pay fringe benefits on overtime hours. Although Burns vociferously denied during her testimony that she *learned* this information, a jury reasonably could have found that, in light of all the evidence, she knew of the requirement to pay fringe benefits on overtime. Such "credibility determinations" are the jury's to make. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000).

14

3.

The last element of unjust enrichment—whether it would be inequitable for defendants to retain the benefit conferred without payment—necessitates "a fact-specific balancing of the equities." *Hill*, 936 A.2d at 355. "The balancing of equities and hardships looks at the conduct of both parties and the potential hardships that might result from a judicial decision either way." *Royal Inv. Grp., LLC v. Wang*, 961 A.2d 665, 685 (Md. App. 2008) (internal quotations and alteration omitted). Though any misconduct or fault by one of the parties may be considered under this element, a finding of fault is unnecessary to find a defendant unjustly enriched. *See Hill*, 936 A.2d at 352. Whether a party is legally or otherwise entitled to the benefit may also factor into the weighing of the equities. *See Plitt v. Greenberg*, 219 A.2d 237, 241 (Md. 1966).

There was sufficient evidence for a reasonable jury to conclude that Schuster's failure to pay fringe benefits on overtime hours was inequitable. We begin by noting that such an inherently fact-specific question is the province of the jury, for the "very essence" of a jury's fact-finding function "is to select from among conflicting inferences and conclusions that which it considers most reasonable." *Tennant v. Peoria & P. U. Ry. Co.*, 321 U.S. 29, 35 (1944). We highlight some of the evidence below.

First, and as discussed above, evidence was presented that Schuster's failure to make fringe benefit payments to certain employees deprived them of the full value of their benefits when compared to those employees who received their benefits in-kind. Whereas employees who received their benefits in-kind gained the total value of their benefits irrespective of how their hours were split between regular and overtime hours, none of the

15

class members received the full value of their benefits. A reasonable jury could have found this disparity inequitable.

Second, a jury could have believed that the overall context of Schuster's subcontract made it inequitable for Schuster to withhold fringe benefit payments. The S.3 shows that Schuster agreed to pay the wage rates "voluntarily adopted" for the MGM project by Whiting-Turner, which mirrored the "Informational Wage Rates for Prince George's County" established by the DLLR. J.A. 5389. Moreover, testimony presented at trial showed that Schuster was aware of the PLA when it bid on the MGM project. Schuster therefore knew that it was working on a project which explicitly tied its wage rates for all contractors, both union and non-union, to that of the state prevailing wage. That state prevailing wage, according to Tudor, requires fringe benefits to be paid on overtime hours.

Third, there was evidence presented throughout trial that Schuster advertised that the MGM project was "scale" to its workers and touted the S.3 as exemplative of the wages being "scale." Nothing on the S.3 denoted to employees that fringe benefits would not be paid on overtime hours. As Appellee Gonzalez testified, he understood "scale" to mean "the highest rate paid by the state or federal government." J.A. 4322. Schuster employees recognized that the terms "scale" and "prevailing wage" are "interchangeable." J.A. 4130. And, as discussed, Tudor testified that the DLLR believed the state prevailing wage to include fringe benefit payments on overtime, a requirement which Burns and Schuster arguably learned during the MGM project. A jury could reasonably have concluded that Schuster gave workers the false impression that they would receive fringe benefits on

16

overtime by repeatedly advertising it as a "scale" project, and thus it was unjust for Schuster to have refused to make such payments.

In response, Schuster primarily argues that it could not have been unjustly enriched because Appellees had no legal entitlement to fringe benefits on overtime. It cites the Supreme Court of Maryland's recent decision in a sister case to this action, *Amaya v. DGS Constr., LLC*, 278 A.3d 1216, 1250–51 (Md. 2022), to argue that "Appellees' claim would be viable only to the extent that they were entitled to be compensated for fringe benefits on overtime." Appellant's Response and Reply Br. at 5.

We do not think Maryland Supreme Court's decision in *Amaya* worked a sea-change in the law of unjust enrichment. Although entitlement to compensation may well factor into the weighing of the equities, *see Plitt*, 219 A.2d at 241, unjust enrichment under Maryland law contemplates a situation "when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided." *Dashiell*, 747 A.2d at 607 (internal quotations omitted). A jury must therefore consider the reasonable expectations of the parties and its own sense of fairness in determining whether a defendant was unjustly enriched. As the district court noted, the "fact that there was no contractual agreement" between Schuster and Appellees on the fringe benefit payments for overtime hours "does not bar recovery" nor does it serve as a "complete defense" to such an action. J.A. 3729.

Ultimately, there was evidence that Schuster benefitted from a contract which incorporated the state prevailing wage rates as a floor for non-union employees. It assented to those wage rates by agreeing to abide by the Project Manual, and it then advertised those

17

wage rates to prospective employees in the S.3. It repeatedly touted the project as "scale," and there was evidence to suggest that "scale" would include fringe benefit payments on overtime. Schuster then unilaterally withheld such payments despite evidence that it knew of and appreciated the benefit it was receiving. It also reaped cost savings from employees in the class who opted for cash benefits payments when compared to those employees who elected to receive benefits in-kind. A jury could thus conclude that it would be inequitable for Schuster not to make fringe benefit payments on overtime. We cannot conclude that the evidence was legally insufficient to prove unjust enrichment. Accordingly, we shall uphold the jury's verdict.

III.

Schuster also argues that the district court erred in instructing the jury on unjust enrichment and in denying its motion *in limine* to exclude testimony that the S.3 obligated Schuster to pay fringe benefits on overtime hours. We review both contentions under an abuse of discretion standard. *See Noel v. Artson*, 641 F.3d 580, 586 (4th Cir. 2011) (jury instructions); *United States v. Hornsby*, 666 F.3d 296, 309 (4th Cir. 2012) (motions *in limine*).

A.

The district court instructed the jury on each of the three elements of unjust enrichment. Schuster's primary argument is that the instructions did not account for the nature of its relationship with Appellees—namely, that Appellees were at-will employees—which Schuster argues changes the nature of their unjust enrichment claim. It faults the district court for charging the jury "with little more than the hornbook elements

18

of an unjust enrichment claim," which neglected the different nature of its relationship with Appellees. Opening Br. at 36.

Schuster's argument boils down to little more than a disagreement with the law of unjust enrichment. The district court was not required to address the at-will nature of the parties, but, even so, it did instruct the jury to consider "whether one party was legally or otherwise entitled to" the benefit under the third element. J.A. 4741. Schuster's primary issue seems to be that the district court did not go far enough in massaging the elements of unjust enrichment to suit its theory of the case.

The refusal to give a requested jury instruction is reversible error only if the instruction "(1) was correct, (2) was not substantially covered by the charge that the district court actually gave to the jury, and (3) involved some point so important that the failure to give the instruction seriously impaired the defendant's defense." *Ward v. AutoZoners, LLC*, 958 F.3d 254, 272 (4th Cir. 2020) (internal quotations omitted). Schuster makes no effort to argue that its requested instructions fit these criteria. The instructions tendered by the district court correctly explained the applicable law and related that law to the circumstances of the case. *See United States v. Lewis*, 53 F.3d 29, 34 (4th Cir. 1995). We thus see no merit in this assignment of error.

## B.

Schuster also argues that the district court abused its discretion by denying Schuster's motion *in limine* to preclude testimony that the S.3 obliged it to pay fringe benefits on overtime hours. According to Schuster, this ruling was inconsistent with the court's summary judgment conclusion that the S.3 "not only fails to explicitly incorporate

19

the requirements of Maryland prevailing wage law, but actually specifically disavows the applicability of the Maryland prevailing wage law." J.A. 3629.

We disagree. As the lower court summarized, though the S.3 may not have created a contractual right to fringe benefit payments on overtime hours, the S.3 was clearly relevant to determining the "intentions and expectations of the plaintiffs and other relevant actors" and "whether the failure of Schuster to pay was inequitable." J.A. 3775. And in an action for unjust enrichment, such evidence is admissible. District courts are necessarily closer to the evidence at trial, and we accordingly respect their discretion in regulating its admissibility. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). We decline to disturb the district court's sound judgment here.

IV.

Last, the class cross-appeals the district court's grant of summary judgment to Schuster on their claim under the MWPCL. At oral argument, Appellees conceded that the cross-appeal was conditional and only viable to the extent that we reversed the jury's verdict on unjust enrichment. *See* Oral Arg. at 2:50:12. Because we affirm the jury's unjust enrichment verdict, we likewise shall not disturb the district court's grant of summary judgment to Schuster on the MWPCL claim.

V.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*

20