HOLMES, Retired Appellate Judge.
In December 1990 Coffee County (County) filed a complaint against Marilynn Ammons (Marilynn), alleging that without the County’s knowledge or consent, Marilynn had taken $125,000 from the County, which she had converted for her use and benefit. The County sought a judgment against Marilynn for $125,000, plus interest, attorney fees, and costs. Marilynn filed an answer, denying the allegations.
In- June 1991 the County amended its complaint to allege that without the County’s knowledge or consent, Marilynn had taken $334,529.53 from the County, which she had converted for her use and benefit. The County sought a judgment against Marilynn for $334,529.53, plus interest, attorney fees, and costs.
In October 1991 Marilynn reached a plea agreement on the- criminal charges pending against her in connection with the missing *1229 money. Marilynn pleaded guilty to theft and forgery. She was sentenced to 15 years in the state penitentiary and ordered to pay the County restitution.
In January 1992, in an effort to recover the monies owed by Marilynn, the County filed a motion for a writ of execution, seeking to seize and sell all real property and motor vehicles which Marilynn and/or her husband, Wendell R. (Buddy) Ammons • (Buddy), owned. In March 1992 the trial court continued a hearing on the motion for a writ of execution until Buddy was made a party defendant and served.
In April 1992 the County filed a motion to add Buddy as a party defendant. The County alleged that Buddy was an indispensable, necessary, and proper party defendant because, it said, he was Marilynn’s husband and familiar with the real estate and personal property that Marilynn owned.
In June 1992 the trial court granted the County’s motion to add Buddy as a party defendant. Thereafter, the County filed its second amended complaint, adding Buddy as a party defendant. The County alleged that in addition to executing and seizing all of Marilynn’s property, it should be allowed to execute and seize all property obtained with funds which Marilynn had wrongfully taken from the County.
Buddy filed a answer, wherein he maintained that there was no evidence that he had wrongfully taken any monies from the County. Buddy also maintained that his salary as a deputy sheriff for the County was used to support his family and to pay for real and personal property that he jointly owned with Marilynn.
In November 1992 the County filed a motion to dismiss Marilynn as a party defendant “as her portion of this matter has been settled with the [County].” In December 1992 the trial court granted the County’s motion and dismissed Marilynn with prejudice.
In January 1993 Buddy filed a multi-count counterclaim against the County, alleging outrageous conduct, abuse of process, malicious prosecution, invasion of privacy, and negligence and wantonness. The County filed an answer, denying the allegations of the counterclaim.
In December 1993 the County filed a summary judgment motion, requesting that the trial court enter a summary judgment in the County’s favor on each count of the counterclaim. The County filed a brief in support of its motion, and Buddy filed briefs in opposition to the County’s summary judgment motion.
In April 1994 Buddy filed a motion to amend his counterclaim to add a count, wherein he sought to void Marilynn’s September 1992 conveyance to the County of her interest in the parties’ marital residence.
In March 1996 the County filed a motion to amend its complaint to add counts alleging conversion, unjust enrichment, money illegally had and received, and open account.
In November 1996 the trial court issued an order. In this order the trial court outlined the lengthy history of the case. The trial court stated that it would allow all amendments to the pleadings that had been filed by the County and Buddy. The trial court also stated that no further amendments to the pleadings would be allowed.
In this November 1996 order the trial court also addressed the County’s summary judgment motion on Buddy’s counterclaim. The trial court granted the County’s summary judgment motion on the outrageous conduct, malicious prosecution, and negligent and wanton conduct counts of Buddy’s counterclaim and dismissed those counts. The trial court specifically noted that the abuse of process and invasion of privacy counts were not dismissed. The trial court also declared that Marilynn’s September 1992 conveyance to the County of her interest in the parties’ marital residence was null and void.
On April 3, 1997, Buddy filed a motion to dismiss the County’s complaint on the grounds that the County had failed to join indispensable parties, the Ammonses’ children. The trial court denied the motion.
On April 7, 1997, the parties struck a jury and the case proceeded to trial on April 8, 1997. At the conclusion of the County’s casein-chief, the trial court entered a judgment as a matter of law on the open account and *1230 conversion counts of the County’s complaint and dismissed those counts. At the conclusion of Buddy’s case-in-chief, the trial court entered a judgment as a matter of law on the abuse of process and invasion of privacy counts of Buddy’s counterclaim and dismissed those counts. The trial court submitted the matter to the jury on the unjust enrichment and the money illegally had and received counts.
After deliberations, the jury returned a verdict in favor of the County and against Buddy in the amount of $15,000. The trial court entered a judgment on that verdict. Thereafter, Buddy filed a motion for a new trial or, in the alternative, a motion to alter, amend, or vacate the judgment, which the trial court denied.
Buddy appeals.
Our review of the record reveals the following pertinent facts: For approximately ten years, Marilynn worked for the County as a bookkeeping clerk. Marilynn’s employment with the County ended in late 1990 when the County discovered that she had stolen County funds.
During their 28-year marriage, Marilynn and Buddy had four children, one of whom has cerebral palsy. At the time of Mari-lynn’s arrest in 1990, the parties’ children were in their teens and twenties.
As previously noted, Marilynn was a bookkeeping clerk, and Buddy was a deputy sheriff for the County. The testimony revealed that Marilynn and Buddy’s combined annual gross incomes totalled between $26,000 and $33,000. Marilynn testified that they had no other sources of income and that they had no savings. Over a period of six fiscal years (beginning in October 1984 and ending in September 1990) Marilynn stole County funds in amounts between $35,700 and $80,-500 per fiscal year, for a total of $334,529.53.
The testimony also revealed the following: Marilynn handled all of the parties’ finances; Buddy did not have a bank account in his name; Marilynn received Buddy’s paycheck each pay period, cashed it, and gave Buddy between $100 and $140 in cash for spending money. Marilynn testified that she did not keep the stolen funds separate from their income from the County — all of the money went into the same pot, and she used it to pay bills and to make purchases.
When the County discovered that some of its funds were missing, it notified the district attorney’s office. Thereafter, an examiner from the Department of Examiners of Public Accounts conducted an audit. The examiner testified that Marilynn was able to take the County’s funds by changing the name of the payee on a check after the check had been signed. The examiner further testified that most of the altered checks were in the $300 to $400 range and that there were hundreds of checks made payable to either Marilynn or Buddy. Marilynn testified that Buddy never endorsed any of these altered checks and that she never told Buddy that she was stealing from the County.
The focus of the County’s case was that Buddy received benefit from the stolen funds. The testimony revealed the following, in pertinent part: In the period between 1984 and 1990, Buddy purchased two travel trailers and a boat. The purchase price for the first travel trailer was $2,200. Marilynn gave Buddy a check for the purchase price. Buddy sold that travel trailer for $1,800 and applied the money toward the purchase of the second travel trailer.
The purchase price for the second travel trailer was somewhere between $10,000 and $13,500. The purchase of the second travel trailer was financed through the bank. Buddy testified that he later sold this travel trailer and received $6,500 from the sale.
Not long after purchasing the second travel trailer, Buddy and Lex, Buddy and Mari-lynn’s son, found a boat that they wanted. The purchase price of the boat was somewhere between $10,000 and $13,500. Mari-lynn gave Buddy a check for the purchase price. Buddy testified that in 1990 or 1991, he sold the boat and received $8,500 from the sale. Lex testified that he did not receive any money from the sale of the boat.
Marilynn testified that some of the stolen County funds were probably used to purchase the travel trailer and the boat and to pay the loan on the second travel trailer. Buddy admitted that it was possible that *1231 some of the stolen County funds were used to purchase the boat.
On appeal Buddy raises four issues. In his first issue Buddy contends that the trial court committed reversible error when it failed to dismiss the County’s complaint for failure to join necessary and indispensable parties (the Ammonses’ children), pursuant to Rule 19, Ala. R. Civ. P., and that it further erred when it failed to require the County to join necessary and indispensable parties.
In J.R. McClenney & Son, Inc. v. Reimer, 435 So.2d 50, 52 (Ala.1983), our supreme court stated the following, in pertinent part:
“There is no prescribed formula to be mechanically applied in every case to' determine whether a party is an indispensable party or merely a proper or necessary one. This is a question to be decided in the context of the particular ease.”
In the present case the County sought to recover property obtained with funds that Marilynn had wrongfully taken from the County. The County alleged and proved that Buddy had benefitted from the stolen funds when he purchased the travel trailers and the boat. The County’s quest to recover the proceeds from the sale of these items did not affect the Ammonses’ children in any manner. Consequently, under the facts of the present case, the Ammonses’ children were not indispensable parties.
In his second issue, Buddy contends that the trial court committed reversible error when it failed to grant his motion to alter, amend, or vacate the judgment because, he says, the County’s settlement with Marilynn left nothing for the County to claim against Buddy.
As previously noted, in 1992 the trial court dismissed Marilynn “as her portion of this matter has been settled with the [County].” Marilynn testified that in 1992 she began paying $110 per month as restitution to the County and that she turned over to the County some jewelry, which cost less than $1,000, and an automobile. However, since Marilynn has not repaid the County $334,-529.53, the County has not obtained satisfaction of its claim and is entitled to proceed against Buddy. Butler v. GAB Business Services, Inc., 416 So.2d 984 (Ala.1982).
In his third issue, Buddy contends that the trial court committed reversible error when it failed to grant.his motion for a new trial or, in the alternative, his motion to alter, amend, or vacate the judgment because, he says, the County failed to meet its burden of proof and the evidence presented was not sufficient to support the verdict.
In Hancock-Hazlett General Construction Co. v. Trane Co., 499 So.2d 1385, 1387 (Ala.1986), our supreme court stated the following, in pertinent part: .
“The essence of the theories of unjust enrichment or money had and received is that a plaintiff can prove facts showing that defendant holds money which, in equity and good conscience, belongs to plaintiff or holds money which was improperly paid to defendant because of mistake or fraud.”
(Emphasis in original.) -
In light of the evidence presented, we conclude that there was substantial evidence that stolen funds were used to purchase and/or to make the payments for the travel trailers and the boat and that Buddy received $15,000 ($6,500 and $8,500) as proceeds from the sale of the travel trailer and the boat. Consequently, there was evidence to support the verdict in this case.
In his fourth issue, Buddy contends that the trial court committed reversible error when it entered a judgment as a matter of law on Buddy’s claim for abuse of process.
In Dempsey v. Denman, 442 So.2d 63 (Ala.1983), our supreme court noted that in an abuse of process claim, it must be shown that the plaintiffs property was unlawfully interfered with under color of process.
We would note that Buddy’s claim for abuse of process centered on his claim that the County wrongfully used process to obtain an illegal result — Marilynn’s 1992 conveyance to the County of her interest in the parties’ marital residence. However, we would note that Buddy testified that when he and Mari-lynn divorced in 1993, he received the marital residence. Buddy testified that he no longer lives in the marital residence and that some *1232 one rents it from him. There was no evidence that the County has attempted to interfere with Buddy’s rental of the house. We would further note that in its November 1996 order, the trial court determined that Marilynn’s 1992 conveyance to the County was null and void.
In light of the foregoing, the trial court did not commit reversible error when it entered a judgment as a matter of law on Buddy’s claim for abuse of process.
The trial court’s judgment is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge Richard L. Holmes while serving on active duty status as a judge of this court under the provisions of Ala.Code 1975, § 12-18-10(e).
AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur.
CRAWLEY, J., recused.