918 A.2d 565

**BANK OF AMERICA CORPORATION**

v.

**Lynne Margaret GIBBONS.**

**No. 0033, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

March 13, 2007.

262

William M. Rudow (Brett R. Myerson, on brief), Baltimore, for appellant.

Katherine B. Eller (Thomas M. DiBiagio, on brief), Baltimore, for appellee.

Panel DAVIS, HOLLANDER, ADKINS, JJ.

Opinion by ADKINS, J.

Over a six year period, Thomas Patrick Gibbons, the husband of appellee Lynne Margaret Gibbons (Mrs. Gibbons), pocketed proceeds from unauthorized sales of securities owned by several customers of his employer, appellant Bank of America Corporation (the Bank). The value of these misappropriated stocks allegedly exceeds $1.5 million.

Thomas Gibbons deposited ill-gotten funds into an account at Provident Bank of Maryland, held in the name of L & S Computer Consultants (LSSC). From this account, Mr. Gibbons regularly withdrew funds that he then deposited into a different Provident account he held jointly with Mrs. Gibbons, and thereafter into jointly held Bank of America accounts.[1] The misappropriated monies were commingled with $502,331 in salary and bonus earnings that Mr. Gibbons also deposited into that joint Bank account over this period. Mrs. Gibbons wrote most of the checks drawn on this account, primarily for household and family purposes.

In an effort to recover some of the stolen funds allegedly deposited into and spent to fund a lavish lifestyle for Mrs. Gibbons and the Gibbons children, Bank of America filed suit against Mrs. Gibbons. During the litigation, it became clear that Mrs. Gibbons had no knowledge of her husband's theft, her belief being that the source of funds he deposited into the joint household account was her husband's legitimate earnings. The Bank pursued conversion and unjust enrichment claims against Mrs. Gibbons.

On cross-motions for summary judgment, the Circuit Court for Harford County held that Mrs. Gibbons is entitled to judgment on the Bank's conversion and unjust enrichment claims. The court explained its ruling in a written opinion

---

1. Bank of America alleges that Mr. Gibbons transferred from the LSSC account to the joint Provident account all but $40,420.85 of the total $1,537,772.53 deposited into the joint Provident account. He then transferred from his Provident account a total of $53,058.00 to the Gibbons' joint checking account at Bank of America, and $136,185.47 to their joint savings account.

that analyzed each element of unjust enrichment and concluded that the Bank "failed to meet [its] burden on all three prongs of the cause of action." The Bank argues that the motion court committed legal error by applying the wrong legal principles to each element. We agree.

## DISCUSSION

### Review Of Summary Judgment

Although "[s]ummary judgment unquestionably is an important device . . . for streamlining litigation[,]" in that it "saves the parties expense and the delays of protracted and non-meritorious litigation[,]" the "dismissal of [a] case deprives the parties of a trial and the opportunity to develop their claims and present them to a jury." *Sadler v. Dimensions Healthcare Corp.*, 378 Md. 509, 534, 836 A.2d 655 (2003). The Court of Appeals "has therefore been careful to restrict application of summary judgment to cases that present no material facts that may reasonably be said to be disputed." *Id.* "The purpose of the summary judgment procedure is not to try the case or to decide the factual disputes, but to decide whether there is an issue of fact, which is sufficiently material to be tried[.]" *Jones v. Mid–Atl. Funding Co.*, 362 Md. 661, 675, 766 A.2d 617 (2001). "The standard of review for a grant of summary judgment is whether the trial court was legally correct." *Goodwich v. Sinai Hosp. of Baltimore, Inc.*, 343 Md. 185, 204, 680 A.2d 1067 (1996). But before "determining whether the trial court was legally correct, an appellate court must first determine whether there is any genuine dispute of material facts." *Dashiell v. Meeks*, 396 Md. 149, 913 A.2d 10, 18 (2006).

Appellate review is based on the same record presented to the motion court. *See Rockwood Cas. Ins. Co. v. Uninsured Employers' Fund*, 385 Md. 99, 106, 867 A.2d 1026 (2005). We "must consider the facts reflected in the pleadings, depositions, answers to interrogatories and affidavits in the light most favorable to the non-moving parties, the plaintiffs. Even if it appears that the relevant facts are undisputed, 'if those

facts are susceptible to inferences supporting the position of the party opposing summary judgment, then a grant of summary judgment is improper.' " *Ashton v. Brown,* 339 Md. 70, 79, 660 A.2d 447 (1995) (citation omitted).

## Unjust Enrichment

"One whose money or property is taken by fraud or embezzlement, or by conversion, is entitled to restitution[.]" 1 Dan B. Dobbs, *Law of Remedies* § 4.1(1), at 553 (2d ed.1993)(hereinafter cited as *"Dobbs").* Under the restitutionary remedies of quasi-contract and constructive trust, "[t]he idea is that the plaintiff's property has been found in the hands of the defendant and must be restored to the plaintiff, even if legal title has passed, and even if the property has undergone a change in form by reason of an exchange or otherwise." 2 *Dobbs* § 6.1(3), at 11. "A person who receives a benefit by reason of an infringement of another person's interest, or of loss suffered by the other, owes restitution to him in the manner and amount necessary to prevent unjust enrichment." *Berry & Gould v. Berry,* 360 Md. 142, 151, 757 A.2d 108 (2000) (quoting *Restatement (Second) of Restitution* § 1 (Tentative Draft No. 1, 1983)).

■ "The restitutionary remedies and unjust enrichment are simply flip sides of the same coin." *Alternatives Unlimited, Inc. v. New Baltimore City Bd. of School Comm'rs,* 155 Md.App. 415, 454, 843 A.2d 252 (2004). Thus, "[r]estitution involves the disgorgement of unjust enrichment." *Consumer Protection Div. v. Morgan,* 387 Md. 125, 168, 874 A.2d 919 (2005). "In explaining the law's reluctance to permit instances of unjust enrichment, John P. Dawson, 'The Self–Serving Intermeddler,' 87 Harv. L.Rev. 1409, 1411 (1974), traces back to the Book of Matthew the belief that men 'should not reap where they have not sown.' " *Alternatives Unltd.,* 155 Md.App. at 455, 843 A.2d 252. "The doctrine of unjust enrichment is applicable where 'the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money,' and gives rise to the policy of restitution as a remedy." *Hill v. Cross Country Settlements, LLC,* 172

Md.App. 350, 914 A.2d 231 (2007) (citations omitted). The purpose of restitution, therefore, "is to prevent the defendant's unjust enrichment by recapturing the gains the defendant secured in a transaction." 1 *Dobbs* § 4.1(1), at 552.

■ "Restitution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain." 1 *Dobbs* § 4.1(1), at 555. " '[A] constructive trust [may] be imposed to avoid unjust enrichment arising out of . . . the violation of any fiduciary duty or any other wrongdoing.' " *Bailiff v. Woolman,* 169 Md.App. 646, 654, 906 A.2d 409 (quoting *Md. Nat. Bank v. Tower,* 374 F.2d 381, 383–84 (4th Cir.1967)), *cert. denied,* 396 Md. 12, 912 A.2d 648 (2006).

■ "In an action for unjust enrichment the burden is on the plaintiff to establish that the defendant holds plaintiff's money and that it would be unconscionable for him to retain it." *Plitt v. Greenberg,* 242 Md. 359, 364, 219 A.2d 237 (1966). Under Maryland law,

[a] claim of unjust enrichment is established when: (1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return.

*Benson v. State,* 389 Md. 615, 651–52, 887 A.2d 525 (2005). As we discuss below, the motion court erred in concluding as a matter of law that Bank of America could not establish any of these three elements.

### I.

### First Element: Benefit Conferred

"A person confers a benefit upon another if he gives to the other possession of or some other interest in money[.]" *Restatement of Restitution* § 1 cmt. a (1937, updated through 2006). The Bank challenges the motion court's ruling that the

Bank did not confer a benefit on Mrs. Gibbons. The court reasoned as follows:

A. *Benefit conferred on the Defendant by the Plaintiff.* At the heart of the concept of unjust enrichment is the willingness of the court under appropriate facts to say that there was an implied or constructive contract between the plaintiff and the defendant. . . . [T]here is absolutely no allegation that the Plaintiff and this particular Defendant had any dealings with one another either directly or indirectly. This court can find no reported appellate case in this state in which there was a claim for unjust enrichment where the claim did not arise out of dealings directly between the parties. **With an implied or constructive contract, as with any other contract, there must be found to be some "meeting of the minds" that creates the obligation from one party to the other and that is absent in this particular case.** Under the Plaintiff's theory, they could pursue an unjust enrichment claim against anyone to whom Mr. Gibbons had given any of the money that he misappropriated from the Plaintiff's clients. **This court cannot see how the Defendant in this particular case stands in any different position from a car dealership where Mr. Gibbons may have purchased a car, a casino where he may have gambled away a portion of the money or a restaurant where he may have bought expensive dinners for his various female companions. To satisfy the first element of this cause of action, the Plaintiff must have conferred some sort of benefit directly on the Defendant from whom the restitution is sought.** The only individual in this case with whom the bank had any direct dealings was Mr. Gibbons and there is not one scintilla of evidence that has been produced that any direct benefit was conferred on Mrs. Gibbons. (Emphasis added.)

The Bank argues that the motion court committed several legal errors in concluding that the Bank cannot establish the threshold "benefit conferred" element of its unjust enrichment claim. In its view, the court's threshold error was to premise its benefit analysis on implied-in-fact contract principles, which require some evidence from which a mutual agreement

can be inferred, rather than on quasi-contract (also know as implied-in-law contract) principles, which "involve[ ] no assent between the parties, no 'meeting of the minds.'" The Bank contends that the motion court then compounded this error by holding that the Bank had to directly deal with Mrs. Gibbons in order to warrant recovery under a theory of unjust enrichment. Finally, the Bank argues, the court erred in concluding that "there is not one scintilla of evidence . . . that any direct benefit was conferred on Ms. Gibbons," despite the obvious cash benefits conferred upon both Mr. and Mrs. Gibbons by the Bank. We agree with all three contentions.

## A.

### No Meeting Of The Minds Required

The motion court erroneously believed that, for an implied contract, there must be some "meeting of the minds" that creates the obligation to perform. The Court of Appeals has distinguished between contracts that are implied-in-fact, which require evidence of a "meeting of the minds," and contracts that are implied as a matter of law, for which a meeting of the minds is not required.

"An implied contract is an agreement which legitimately can be inferred from intention of the parties as evidenced by the circumstances and 'the ordinary course of dealing and the common understanding of men.'" . . . *Black's Law Dictionary* . . . defines [a *quasi*-contract] as a

[l]egal fiction invented by common law courts to permit recovery by contractual remedy in cases where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise. It is not based on intention or consent of the parties, but is founded on considerations of justice and equity, and on doctrine of unjust enrichment. It is not in fact a contract, but an obligation which the law creates in absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances

that in equity and good conscience he ought not to retain it.

*See County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.,* 358 Md. 83, 94–95, 747 A.2d 600 (2000) (citations omitted). *See* also Restatement (Second) of Contracts § 4 cmt. b (1981, updated through 2007)(contracts implied in law "are not based on the apparent intention of the parties to undertake the performances"; "[t]hey are obligations created by law for reasons of justice").

Because an "unjust enrichment claim is based on a quasi-contract or an implied-in-law contract[,]" *Alternatives Unltd.,* 155 Md.App. at 461, 843 A.2d 252, "it is simply a rule of law that requires restitution to the plaintiff of something that came into defendant's hands but belongs to the plaintiff in some sense.' " *Mass Transit Admin. v. Granite Constr. Co.,* 57 Md.App. 766, 775, 471 A.2d 1121 (1984)(quoting 1 *Dobbs* § 4.2). The motion court erred in holding that the Bank's unjust enrichment claim fails for lack of evidence showing a meeting of the minds.

## B.

### No Dealings Directly Between The Parties Required

The court also erroneously required direct dealings between the Bank and Mrs. Gibbons. Contrary to the motion court's legal conclusion, a cause of action for unjust enrichment may lie against a transferee with whom the plaintiff had no contract, transaction, or dealing, either directly or indirectly.

*Plitt v. Greenberg,* 242 Md. 359, 219 A.2d 237 (1966), is instructive, in that the Court of Appeals explicitly rejected a similar contention that unjust enrichment requires transactional privity between the party who conferred the benefit and the party who received it. Blacker, an attorney, represented Plitt in a number of financial transactions. Plitt agreed to loan Blacker and his partner, Greenberg, the sum of $38,333.34. Plitt wrote a check in that amount, payable to Blacker and his wife. Blacker endorsed the check and forged

his wife's signature. Unaware of that forgery, Plitt then endorsed the check with a special endorsement that it be paid "to the order of the First National Bank of Balto. for wire transfer to the Central National Banks Richmond, Va. for credit Theodore E. Greenberg.'" *Id.* at 362, 219 A.2d 237. Although Plitt never had direct contact with Greenberg, he endorsed payment to Greenberg because Blacker told him that he "could look to Greenberg and the Blackers for repayment." *Id.* The funds were deposited into Greenberg's checking account.

As security for the debt, Blacker endorsed over to Plitt a $45,000 note payable to the Blackers from Alsage Realty Corporation, as well as Blacker's oral promise that replacement collateral would be secured via Greenberg. But no replacement collateral ever materialized, the notemaker proved to be a paper corporation with no assets, and the Blackers filed bankruptcy. As a result, Plitt sued Greenberg, with whom he had never dealt directly, for debt, fraudulent misrepresentation, and unjust enrichment. The trial court directed a verdict on the unjust enrichment claims in favor of defendant Greenberg.

The Court of Appeals reversed, holding that Plitt had "a colorable cause of action grounded on a theory of unjust enrichment or restitution[,]" even though there was no evidence that Greenberg dealt with Plitt or otherwise participated in Blacker's fraud. *See id.* at 363, 219 A.2d 237. The Court explained:

> Although Greenberg may not have known that he had received the proceeds of Plitt's check into his account, and no express contract for debt existed between Plitt and Greenberg, the law implies a debt "whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain." According to the *Restatement, Restitution* § 123:
>
> > **"A person who, non-tortiously and without notice that another has the beneficial ownership of it, acquires property which it would have been wrongful for him to**

> acquire with notice of the facts and of which he is not a purchaser for value is, upon discovery of the facts, under a duty to account to the other for the direct product of the subject matter and the value of the use to him, if any[.]" . . . .

> "It is immaterial how the money may have come into the defendant's hands, and the fact that it was received from a third person will not affect his liability, if, in equity and good conscience, he is not entitled to hold it against the true owner."

*Id.* at 363–64, 219 A.2d 237 (emphasis added and citation omitted). *See also Hill v. Cross Country Settlements, LLC,* 172 Md.App. 350, 914 A.2d 231, 2007 WL 29191, *6 ("The lack of an express contract or privity between appellant and [defendant] does not preclude application of the principles of unjust enrichment").

The Court of Appeals explained that Greenberg's innocence could not shield him because he had given no consideration for the loan.

> It has been held that **a plaintiff could recover money from even an innocent transferee who was without knowledge that he possessed the plaintiff's money.** However, if a transferee came into possession of a plaintiff's money in good faith after paying a good and valuable consideration for it, then the plaintiff could not prevail and recover back the funds in that transferee's possession.

> In order to make out a case of unjust enrichment, **the burden rested upon Plitt to prove that the proceeds of his check, which were deposited into Greenberg's account, were received without the payment of valuable consideration from Greenberg to Blacker.**

*Plitt,* 242 Md. at 364–65, 219 A.2d 237 (emphasis added and citations omitted).

Although Greenberg claimed that he paid Blacker $38,333.34 in exchange for Plitt's check in that amount, Greenberg was "unable to produce any checks, check stubs or records" showing payments from Greenberg to Blacker total-

ing that amount. *See id.* at 365–66, 219 A.2d 237. Pointing to bank statements that contradicted Greenberg's testimony, the Court of Appeals held that there was "sufficient evidence of lack of payment to Blacker for the proceeds of Plitt's check received into Greenberg's account as would justify taking the case to the jury." *Id.* at 367, 219 A.2d 237. If the jury found that Greenberg did not pay for the $38,333.34 deposit from Plitt, Greenberg could not establish an "innocent transferee for value" defense to Plitt's claim for unjust enrichment. *See id.* at 365–66, 219 A.2d 237.

As Mrs. Gibbons correctly points out, *Plitt* differs from this case in that the party seeking restitution in that case (Plitt) directly endorsed payment of the disputed funds to the defendant from whom he sought to recover those funds (Greenberg), whereas there is no evidence in this case that Bank of America approved payment of the disputed funds to Mrs. Gibbons. We do not find that factual distinction material, however. In *Plitt*, the Court of Appeals made it clear that the dispositive element would not be whether Greenberg "dealt" with Plitt, but whether Greenberg, as the defendant transferee, paid value for the funds transferred to him as a result of the actions of Blacker, the culpable third party. Thus, the fact that Bank of America neither "endorsed" nor otherwise approved Thomas Gibbons' transfer of stolen money to Mrs. Gibbons does not preclude the Bank's claim for unjust enrichment.

Instead, the dispositive question is whether Lynne Gibbons, as the defendant transferee, paid value for the funds transferred to her by Thomas Gibbons, the culpable third party. If the misappropriated Bank funds can be traced into her account,[2] there was no consideration for such deposits, and there

---

2. "A special tracing problem occurs when the plaintiff's monies are mingled with funds of the defendant or funds of others." 2 *Dobbs* § 6.1(4), at 16. For tracing issues that may arise when withdrawals have been made from a commingled account and when wrongfully obtained funds from several victims have been commingled with each other, *see generally id.* at § 6.1(4)(discussing mingled funds).

is no other defense to the Bank's claim for restitution,[3] then the Bank could prevail on its unjust enrichment cause of action.

The motion court's emphasis on "direct dealings" between the Bank and Lynne Gibbons ignores the potential significance of evidence that Mrs. Gibbons did not pay value. In particular, the court erred in concluding, as a matter of law, that stolen funds traced into the Gibbons' joint accounts should be treated as if those funds had been used to purchase cars, gamble at casinos, or dine in fine restaurants. As Bank of America points out, if an innocent transferee may retain the benefit of stolen funds without paying value for them, not only would she receive a windfall, but so would the thief. He would benefit from his wrongdoing by being permitted to place the funds beyond reach of the victim simply by depositing them into a joint account with his spouse and shielding her from any knowledge of his wrongdoing.

## C.

### Benefit Conferred

Bank of America argues that the court's third error with respect to the first element of unjust enrichment was to conclude that there was no evidence "that any direct benefit was conferred on Mrs. Gibbons." The Bank points to Mrs. Gibbons' admission that proceeds from her husband's thefts were deposited into her joint checking account. Those funds belonged to the Bank and its customers. *See, e.g., Keller v. Fredericktown Sav. Inst.*, 193 Md. 292, 296, 66 A.2d 924 (1949)(recognizing that bank owns the money deposited by its customers, "subject to the right of the depositor to draw on it"); *Suburban Trust v. Waller*, 44 Md.App. 335, 339–40, 408 A.2d 758(1979)(relationship between bank and its customers is one of debtor and creditor).

---

**3.** *See generally* 1 *Dobbs* § 4.6–4.7 (defenses of change of position, bona fide purchase); 2 *Dobbs* § 6.1 (Misappropriation of Money—Tracing).

Mrs. Gibbons responds that "there is no authority under Maryland law supporting th[e] proposition" that the benefit conferred element of an unjust enrichment cause of action may be satisfied by evidence that such benefit was conferred upon the defendant by the third-party wrongdoer, rather than by the plaintiff itself. To the contrary, she cites *Crosby v. Crosby*, 769 F.Supp. 197, 200–01 (D.Md.1991), *aff'd on other grounds*, 986 F.2d 79 (4th Cir.1993), as precedent for her thesis that summary judgment is appropriate when the claimed benefits were not directly conferred by the plaintiff.

We do not agree that *Crosby* supports Mrs. Gibbons' argument. There, the plaintiff, Margaret Crosby, was the deceased husband's wife, from whom he was never divorced. Margaret sued Joan Crosby, the husband's purported second wife, seeking a declaration that Margaret was entitled, *inter alia*, to the deceased's interest in his home, car, and pension benefits. Margaret argued that the pension benefits were payable to her as surviving spouse, because "they were 'constructively or indirectly' conferred upon the defendant [Joan] by the plaintiff [Margaret]." *Id.* at 201. The federal district court noted that it found no authority for that proposition, but then granted summary judgment on alternative equitable grounds:

> [W]ere this Court to determine that the benefits were conferred by plaintiff upon defendant, plaintiff still could not prevail. Margaret Crosby fails to prove that defendant's acceptance or retention of the benefit under the circumstances of this case make it inequitable for her to retain the payments. Joan Crosby accepted the pension benefits of a man with whom she lived for twenty two years. Defendant believed until after Leonard Crosby's death that the two were legally married. Margaret Crosby has come forward after having no contact with Leonard Crosby for as many as fifteen years and seeks his pension benefits. **Under these circumstances it is not inequitable for defendant to retain the benefits already conferred upon her.**

*Id.* (emphasis added). The Fourth Circuit affirmed on grounds relating to the exercise of discretion under ERISA.

*See id.,* 986 F.2d at 82–84. Thus, the decision in Crosby does not rest on any requirement that the plaintiff must directly confer the benefit upon the defendant.

In our view, *Plitt* illustrates that the benefit may be conferred by the wrongdoer *or* the plaintiff seeking restitution. *See also Restatement (First) of Restitution* § 123 (1937, updated through 2006)(innocent recipient of property that he could not lawfully acquire must account to true owner if he is not a purchaser for value). Many courts have held an innocent spouse accountable for a benefit conferred by the embezzling mate, rather than the unjust enrichment claimant. *See, e.g., In re Marriage of Allen,* 724 P.2d 651, 659 (Colo.1986)(ex-wife whose husband deposited embezzled funds into family account used to purchase family home and other property was subject to unjust enrichment claim); *Fed. Ins. Co. v. Smith,* 144 F.Supp.2d 507, 524–25 (E.D.Va.2001), *aff'd,* 63 Fed.Appx. 630, 634–35 (4th Cir.2003) (innocent spouse of embezzler who used stolen funds to satisfy spouse's personal and joint obligations and expenses held liable under conversion theory); *Bransom v. Std. Hardware, Inc.,* 874 S.W.2d 919, 927 (Tex.App.1994)(husband of embezzler who used stolen funds for household purposes held liable on unjust enrichment claim). Here, the motion court erred in concluding that lack of evidence that the Bank approved Mrs. Gibbons' receipt of the stolen money prevented the Bank from prevailing on its unjust enrichment claim.

## II.

### Second Element: Knowledge Of The Benefit

In evaluating the second element of whether "the defendant knows or appreciates the benefit," the motion court relied on evidence provided in the affidavits of Mr. and Mrs. Gibbons:

> **B. *Appreciation or knowledge by the Defendant of the benefit conferred.*** ... Mr. Gibbons stated in his affidavit that the great majority of the funds that he misappropriated during the course of employment was spent by him on

personal entertainment, trips and other activities that his wife did not know about or participate in. While some of the funds were deposited into the family's checking account, they were commingled with the money that he earned as salary and bonuses and Ms. Gibbons did not know the source of these additional funds. He further stated that he kept strict control over the family's finances and all banking statements and checking accounts were sent to addresses other than the family residence. He also stated that he told Ms. Gibbons that all of the monies that were available to him were legitimately obtained and that she had no knowledge that he obtained money from unlawful activities.

Ms. Gibbons in her Affidavit stated that her husband maintained control over the family accounts and records and did not share any financial information with her. She went on to state that her husband had actively concealed his various activities, illegal and otherwise, from her, that she had no knowledge that he was engaged in unlawful activities or was placing money from third parties into their joint account and that whatever money was placed into the joint account was used by her for family expenses.

The circuit court concluded that, because this evidence was unrebutted, the Bank failed to establish a dispute as to whether Mrs. Gibbons knew that the funds deposited by her husband were stolen. It then ruled that Mrs. Gibbons' lack of awareness that the funds deposited by her husband resulted from misappropriation barred the Bank's unjust enrichment claim:

It is clear from the unrebutted facts as set forth in the affidavits of the Defendant and Mr. Gibbons that **Ms. Gibbons had no actual knowledge that some "benefit" was being conferred upon her by the Plaintiff, albeit indirectly, by reason of Mr. Gibbons' making a small percentage of the funds that he stole available to her for her use and the use of their family.** The court therefore believes that the Plaintiff's claim fails on this particular element of the cause of action pled. (Emphasis added.)

Bank of America asserts that the erroneous "view taken by the trial court was that a defendant must have actual or constructive knowledge of the **source** of the benefit received in order to satisfy the second element[.]" (Emphasis added.) Citing *Plitt,* the Bank argues that a transferee's innocence as to the source of the deposited funds is not a bar to recovery for a claim based on unjust enrichment. Acknowledging that the good faith of Mrs. Gibbons is a factor that the court can consider when determining the third element of unjust enrichment, the Bank urges that her good faith is not the "determining factor" on this second element.

We agree that Bank of America is not required to prove Mrs. Gibbons knew of her husband's thefts. The *Restatement (First) of Restitution* section 123, as cited and applied in *Plitt,* explains that the knowledge necessary to establish the second element of an unjust enrichment claim is not necessarily knowledge that the funds were obtained by wrongful conduct against the plaintiff who seeks their return:

§ 123. Bona Fide Transferee Who Is Not A Purchaser For Value

A person who, **non-tortiously and without notice that another has the beneficial ownership of it,** acquires property which it would have been wrongful for him to acquire with notice of the facts and of which he is not a purchaser for value is, upon discovery of the facts, under a *duty to account* to the other for the direct product of the subject matter and the value of the use to him, if any, and in addition, to:

(a) return the subject matter in specie, if he has it;

(b) pay its value to him, if he has non-tortiously consumed it in beneficial use;

(c) pay its value or what he received therefore at his election, if he has disposed of it. (Emphasis added.)

This rule "is applicable to a person who, by gratuitous grant, by will or by descent, has received the title to property, either real or personal, in which another has a beneficial ownership

of which the transferee has no notice at the time of the receipt." *Id.,* cmt. a (emphasis added).

This principle was applied explicitly in *Plitt,* where the Court of Appeals held that Plitt's claim for unjust enrichment could be supported by evidence that Greenberg was a transferee who was not a purchaser for value. In doing so, the Court observed that,

> [a]lthough Greenberg may not have known that he had received the proceeds of Plitt's check into his account, . . . the law implies a debt "whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain." . . . **[A] plaintiff could recover money from even an innocent transferee who was without knowledge that he possessed the plaintiff's money.**

*Plitt,* 242 Md. at 363–64, 219 A.2d 237 (citation omitted and emphasis added). *See also In re Marriage of Allen,* 724 P.2d at 659 (collecting cases). Here, the motion court erred in granting summary judgment on the ground that Bank of America failed to establish that Mrs. Gibbons knew her husband was depositing the proceeds of his thefts from Bank clients into their joint bank accounts.

## III.

### Third Element: Unjust Retention Of The Benefit

 "[W]hile 'a person is enriched if he has received a benefit,' the law does not consider him unjustly enriched unless 'the circumstances of the receipt of the benefit are such as between the two that to retain it would be unjust.' " *First Nat'l Bank v. Shpritz,* 63 Md.App. 623, 640, 493 A.2d 410 (quoting *Hamilton v. Bd. of Educ.,* 233 Md. 196, 201, 195 A.2d 710 (1963)), *cert. denied,* 304 Md. 297, 498 A.2d 1184 (1985). With respect to this final element, the motion court also determined that Bank of America failed to establish a dispute:

> C. *The acceptance or retention of the benefits under circumstances that make it inequitable to retain benefits without payment* of their value. This court believes that

considering the totality of the circumstances and even viewing the pleadings and facts in the light most favorable to the bank, the Plaintiff has failed to set forth sufficient facts and allegations that would meet this particular element of the cause of action. The Plaintiff in its Complaint asserts that Ms. Gibbons had knowledge of her husband's theft but backs this up with no facts and, as set forth above, this allegation is completely rebutted by Mr. and Mrs. Gibbons' affidavits. The Plaintiff goes on to allege that the Defendant lived a "lavish lifestyle" and cites as examples the fact that in mid–2005 the Gibbons' son went to Europe at a cost of $2,388 and the rest of the family went to Disney World. Even accepting these facts as true, neither of the activities in question are outside the scope of families with the Defendant's base income. It is also noted that both trips took place in mid–2005, after the embezzlement by Mr. Gibbons had been discovered.

**Considering the Defendant's total lack of knowledge of the source of the supplemental funds that were placed in the family account and the lack of any factual assertions by the Plaintiff that there was any reason that Ms. Gibbons should have been aware of any wrongdoing on her husband's part, it is difficult to see how the circumstances are such that it would be equitable to require the Defendant to pay money to the Plaintiff.**

The Bank argues that the motion court mistakenly relied on Lynne Gibbons' innocence regarding her husband's thefts in concluding that she should not be required to return the money he stole from the Bank. Citing *Plitt* and the *Restatement*, the Bank also contends that "consideration of the respective financial positions of the parties is . . . improper[.]" Although Mrs. Gibbons' good faith "is a factor that the court can consider when determining whether the circumstances are such that it would be inequitable for the defendant to retain the benefit without payment of its value, it is neither the exclusive nor determining factor."

We conclude that the motion court's almost exclusive focus on Lynne Gibbons' lack of knowledge undermined and unduly

limited its analysis about whether, as a matter of law, it would be equitable to require her to pay money to the Bank as restitution. Although Mrs. Gibbon's good faith is a highly relevant factor, it does not, by itself, support a determination as a matter of law that " 'the circumstances of the receipt of the benefit are such as between the [Bank and Mrs. Gibbons] that to retain it would be unjust.' " *See also Ammons v. Coffee County,* 716 So.2d 1227 (Ala.Civ.App.1998)(affirming verdict against innocent spouse when stolen funds were used to acquire boat and trailer.)

▮ Courts often have required an innocent recipient benefitted by third party wrongdoing to establish a change of circumstances that makes it inequitable to order restitution. *See Fed. Ins. Co.,* 144 F.Supp.2d at 524–25; *Restatement Restitution* § 142. Thus, when the recipient's change of circumstances was not caused by his or her wrongful conduct, "the primary rule is that if repayment will cause the recipient loss, restitution is barred to the extent that such loss would occur." *Hilliard v. Fox,* 735 F.Supp. 674, 677–78 (W.D.Va. 1990). *See also Restatement Restitution* § 142 cmt. b ("Any change of circumstances which would cause ... the recipient entire or partial loss if the claimant were to obtain full restitution, is such a change as prevents full restitution"). This rule rests on the recognition that the innocent recipient's repayment of ill-gotten funds "will not normally cause the recipient any net loss—he will merely be returned to the *status quo ante." Hilliard,* 735 F.Supp. at 678.

An innocent spouse could also avoid liability by proving that the money deposited in a joint account was used by the wrongdoing spouse for his (or her) own benefit, without any benefit to the family. *Cf. McMerty v. Herzog,* 702 F.2d 127, 130 (8th Cir.1983)(burden on innocent spouse to prove, with respect to joint property bought with wrongfully obtained funds, which part of purchase price, if any, was not wrongfully diverted); *Namow Corp. v. Egger,* 99 Nev. 590, 668 P.2d 265, 267 (1983)(when misappropriated funds are used to purchase real property, innocent donee of property is entitled to offset

principal mortgage payments, and payments for improvements and taxes against party seeking constructive trust).

In sum, the motion court erred in granting summary judgment based on Mrs. Gibbons' lack of knowledge. The innocence of Mrs. Gibbons, by itself, does not preclude a claim for unjust enrichment. The motion court did not consider whether exclusive use of money by Mr. Gibbons (without benefitting the family), a change in Mrs. Gibbons' circumstances, or other equitable circumstances might warrant denial or reduction of the Bank's unjust enrichment claim. On remand, the parties may present evidence pertinent to these equitable considerations.

**JUDGMENT VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**