IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 17, 2017 Session

**DWIGHT JENKINS v. MICHAEL SCHMANK, ET AL.**

**Appeal from the Chancery Court for Bradley County**
**No. CV-08-228     Jerri S. Bryant, Chancellor**

_____

**No. E2017-00371-COA-R3-CV**
_____

This appeal involves the plaintiff's filing of a complaint for unjust enrichment and conversion against his business partner's spouse after the plaintiff discovered that his partner converted partnership funds for personal use. The trial court dismissed the complaint following a bench trial. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J. and THOMAS R. FRIERSON, II, J., joined.

Joshua H. Jenne, Cleveland, Tennessee, for the appellant, Dwight Jenkins.

Harry W. Miller, III and Alexander T. Burd, Chattanooga, Tennessee, for the appellees, Michael Schmank and Lori Schmank.

**OPINION**

## I.     BACKGROUND

In April 2008, Dwight Jenkins ("Plaintiff") and Michael Schmank ("Schmank") entered into a general partnership agreement as J & S General Contractors ("J & S") for the purpose of completing a residential construction project with James Duff d/b/a Duff Development, LLC. Plaintiff contributed capital and his services as a licensed general contractor, while Schmank agreed to serve as the project manager. The partnership eventually deteriorated when it was discovered that Schmank converted funds paid to the partnership for his personal use.

Plaintiff filed a complaint against Schmank on August 8, 2008, and an amended complaint on March 26, 2009, in which he added Schmank's wife, Lori Schmank ("Wife"), as a party. As pertinent to this appeal, Plaintiff alleged that Schmank converted $11,500 in cash belonging to the partnership and an additional $13,500 in cash that Schmank requested as a pay advance for living expenses. Thereafter, Schmank filed a petition for bankruptcy on May 3, 2009. Plaintiff then filed an action in bankruptcy court, objecting to the discharge of the debt owed to him for the pay advance, for the conversion of the partnership funds, and for lost profits as a result of Schmank's mismanagement of the project.

The Chancery Court proceedings were stayed pending adjudication of the bankruptcy proceedings. On July 28, 2015, the bankruptcy court awarded Plaintiff a non-dischargeable judgment for the second claim in the amount of $11,500, in addition to attorney fees and expenses in the amount of $18,025.56, for a total judgment of $29,525.56. The bankruptcy court did not award a judgment for the $13,500 pay advance or the claim for lost profits based upon its finding that Plaintiff failed to establish any material misrepresentations with respect to Schmank's request for a pay advance or the claim for lost profits.

Thereafter, Plaintiff proceeded with the case against Wife on the theory of unjust enrichment and conversion before the Chancery Court. The parties appear to have agreed that funds were fraudulently converted by Schmank and placed by him into a joint checking account he shared with Wife. Plaintiff presented Schmank and Wife's bank statements, reflecting deposits of converted funds and Wife's use of said funds for general household expenditures.

Wife admitted that she knew of her husband's partnership with Plaintiff and that the funds at issue were obtained from the partnership and placed into a joint checking account she shared with her husband. However, she denied any knowledge of Schmank's fraud or conversion of the funds. She asserted that Schmank controlled the account, paid all bills, and made all financial decisions. She did not open the mail or question Schmank about his business ventures. Instead, he provided her with cash or checks for specific purchases. She claimed that they never discussed their finances, despite the fact that she was a signatory on the joint checking account at issue, that she filed a lawsuit relating to their purchase of a vehicle,[1] and that she accepted service of process for another lawsuit that had been filed against her husband relating to a different failed business venture. She explained that she was preoccupied with family matters at that time and stated,

---

[1] At first, she denied knowledge of ever having been involved in litigation outside of custody matters.

I had three children, young. I did everything with them, sports. I had a little one still at home. I had sick grandparents which live next door to me that I helped care for and still help care for my grandfather. I had – my oldest son was critically ill in 2008.

She identified several expenditures on the bank statements and confirmed that she used the money to pay for general expenses, namely bills, dining at restaurants, and groceries.

Following the presentation of the above evidence, the court dismissed the case, finding as follows:

[T]here's no proof that [Wife] reasonably understood . . . that [Schmank] committed any acts of fraud against [Plaintiff]. It's her testimony in this case that her husband handled all of the family finances. That if she needed money she had to ask him for it. That she was - - she did not carry checks or a debit card on a regular basis. She got these from him.

She was impeached, however, about her knowledge of a prior lawsuit where she was sued in the past. And whether or not she had signed any bank documents. She [testified] that during the period of time in question they had three young children and she was also taking [care of] the grandparents who were critically ill. So the court is to decide whether . . . the circumstances demonstrate that it would be unjust for her to retain the goods or services without repaying the money that was placed into her joint bank account with her husband.

And the court finds that particularly under [*Doe v. HCA Health Services*, 46 S.W.3d 191 (Tenn. 2001)] and also mindful of [*Bank of America v. Gibbons*, 173 Md. App. 261 (Md. Ct. App. 2007)], which is a Maryland case that was [cited for] the fact that [her status as] an innocent transferee does not prohibit [Plaintiff] from requesting those funds back. However, it's [Plaintiff's] burden to prove that it would be unjust. The only monies that she used or knew of in that account were she thought payment made lawfully to her husband for work that he was doing for [Plaintiff] and the court doesn't find the circumstances of this case rise to the level of where it would be unjust for her to keep those funds[.]

The court also found no proof of conversion. This timely appeal followed the denial of post-trial motions.

## II.  ISSUE

The sole issue on appeal is whether the court erred in dismissing the claims against Wife for unjust enrichment and conversion.

## III.  STANDARD OF REVIEW

After a bench trial, we review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise.  Tenn. R. App. P. 13(d).  "Because trial courts are able to observe the witnesses, assess their demeanor, and evaluate other indicators of credibility, an assessment of credibility will not be overturned on appeal absent clear and convincing evidence to the contrary." *Hughes v. Metro. Gov't of Nashville & Davidson Cty.*, 340 S.W.3d 352, 360 (Tenn. 2011) (citation omitted).  We review questions of law de novo with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

## IV.  DISCUSSION

Plaintiff argues that the court erred in dismissing his claims for unjust enrichment and conversion when the court credited Wife's testimony even though she had clearly been impeached.  He claims that the court committed further error by deeming her lack of knowledge as the determining factor in dismissing the unjust enrichment claim.  Wife responds that the court did not err in crediting her testimony and that review of the court's credibility determination is not warranted given the facts presented.  She claims that Plaintiff failed to satisfy his burden in support of either claim for recovery when he failed to establish that her keeping the funds would be unjust or that she evidenced the necessary intent to sustain a claim for conversion.

"Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same." *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966).  The terminology is frequently employed "interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between the parties." *Id.*  "The doctrine of unjust enrichment is founded upon the principle that someone who receives a 'benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation, must do so.'" *CPB Mgmt., Inc. v. Everly*, 939 S.W.2d 78, 80 (Tenn. Ct. App. 1996) (quoting *Lawler v. Zapletal*, 679 S.W.2d 950, 955 (Tenn. Ct. App. 1984)).

Our courts have utilized different tests in determining whether it should impose a contractual relationship between the parties based upon the theory of unjust enrichment. One such test is as follows:

> (1)     There is no existing, enforceable contract between the parties covering the same subject matter;
>
> (2)     The party seeking recovery proves that it provided valuable goods or services;
>
> (3)     The party to be charged received the goods or services;
>
> (4)     The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and
>
> (5)     The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.

*Doe v. HCA Health Services of Tennessee, Inc.*, 46 S.W.3d 191, 197-98 (Tenn. 2001). A second test presents nearly the same factors in the following condensed form:

> (1)     a benefit conferred upon the defendant by the plaintiff;
>
> (2)     appreciation by the defendant of such benefit; and
>
> (3)     acceptance of such benefit under circumstances that it would be inequitable for the plaintiff to retain the benefit without payment of the value thereof.

*Estate of Lambert v. Fitzgerald*, 497 S.W.3d 425, 458 (Tenn. Ct. App. 2016) (internal quotations and citations omitted). Neither test has been identified as the bright-line rule; however, our courts have determined that the most significant requirement in establishing an unjust enrichment claim is whether retaining the benefit would be unjust. *Id.*

Here, the record definitively establishes all but one factor under either test, namely whether Wife's retention of the benefit would be unjust under the circumstances. The court found that it would not be unjust, based largely upon Wife's lack of knowledge concerning the true circumstances of the source of the funds. In so holding, the court credited Wife's testimony that she was not involved in the family finances and only made

expenditures when permitted. The record supports the court's credibility determination as evidenced by the bank statements presented.

The bank statements do not evidence a lavish lifestyle or excessive purchases made by either party before or after the deposit of the funds at issue, thereby supporting Wife's claim that she believed the money in the account was lawfully obtained for work performed by Schmank as a project manager for a residential construction project. The record further establishes that the Schmanks' financial circumstances have deteriorated as evidenced by Schmank's filing for bankruptcy and the non-dischargeable judgment entered against him. Thus, Wife has not continued to receive the benefit of the funds unlawfully retained. *See Bank of Nashville v. Chipman*, No. M2010-01581-COA-R3-CV, 2011 WL 3433012, at *5-6 (Tenn. Ct. App. Aug. 5, 2011) (holding that retention of the benefit would be unjust when the funds at issue were placed into an individual retirement account, from which the innocent spouse paid general household expenses and continued to benefit from the proceeds).

With the above considerations in mind, we conclude that Wife's retention of the benefit under the circumstances presented would not be unjust and affirm the dismissal of the unjust enrichment claim. Likewise, we also affirm the dismissal of the conversion claim, an intentional tort requiring proof of Wife's knowledge of the true source of the funds at issue. *Marks, Shell, & Maness v. Mann*, No. M2002-00652-COA-R3-CV, 2004 WL 1434318, at *4-5 (Tenn. Ct. App. June 23, 2004) (upholding the court's finding of conversion against the husband when the evidence established a significant change in the parties' lifestyle as a result of the wife's embezzlement of funds from her employer).

## V. CONCLUSION

This judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Dwight Jenkins.

_____
JOHN W. McCLARTY, JUDGE